964 So.2d 752 (2007)
INFINITY DESIGN BUILDERS, INC., Appellant,
v.
M.F. HUTCHINSON, Appellee.
No. 5D06-2730.
District Court of Appeal of Florida, Fifth District.
August 24, 2007.
Rehearing Denied September 24, 2007.
*754 Penny W. Schmidt and R. Gregg Jerald, of Schutt, Schmidt, Burnett & Noey, Jacksonville, for Appellant.
P. Campbell Ford and Ali A. Tedrick, of Ford, Miller & Wainer, P.A., Jacksonville, for Appellee.
MONACO, J.
Infinity Design Builders, Inc., appeals an order of the trial court denying its motion to stay arbitration proceedings. Because there was no agreement between the parties to arbitrate, and because Infinity did not knowingly waive its constitutional right to litigate its dispute with the appellee, M.F. Hutchinson, in court, we reverse.
The relevant facts of this case begin in 2001, when the parties executed a contract in which Infinity agreed to construct an oceanfront custom residence on Mr. Hutchinson's real property. Infinity thereafter and in due time constructed the house. In 2005, Mr. Hutchinson notified Infinity and the American Arbitration Association ("AAA"), that he was demanding arbitration with respect to his claim that during the hurricanes of the previous year, significant leaking occurred around the windows of the home. As a result, according to Mr. Hutchinson, the windows were damaged and mold and mildew infiltrated the house. Mr. Hutchinson attached to his demand for arbitration a copy of an AIA construction contract that required disputes over the construction of the residence to be resolved by arbitration and mediation. The contract, which was purported to be the one entered into by the parties, bore no signatures. An addendum also submitted by Mr. Hutchinson was signed by the parties, but contained no reference to arbitration.
During the four-month period between the filing of the demand for arbitration and the objection to arbitration, the parties had exchanged letters concerning the arbitration proceeding, and Infinity filed a motion with the AAA to abate the arbitration until Mr. Hutchinson complied with the notice requirements of Chapter 558, Florida Statutes (2006), which deals with construction defects. In addition, Infinity denied liability and reserved the right to assert affirmative defenses. The parties further agreed that the arbitration would be held in Jacksonville, and that certain AAA procedures would not apply. Finally, the parties sent a checklist for conflicts to the AAA, agreed on the selection process and the criteria for the arbitrator, and took a number of other steps consistent with their participation in arbitration.
At that point Infinity filed an objection to arbitration with the AAA asserting that in fact no arbitration agreement existed between Infinity and Mr. Hutchinson, because the contract attached to the demand *755 for arbitration was not an accurate copy of the contract actually executed by the parties. The correct contract, according to Infinity, was actually signed by the parties, but had the entire section on mediation and arbitration crossed out. The crossed out section was, moreover, initialed by each of the parties.
A month later Infinity filed a complaint in circuit court seeking a stay of the arbitration proceeding in accordance with section 682.03(4), Florida Statutes (2006). The trial court granted a temporary stay of the arbitration and set a hearing date to consider Infinity's motion to stay arbitration.
At the conclusion of the hearing, which was non-testimonial in nature, the trial court entered an order on Infinity's motion to stay arbitration in which it related that the contract attached to the demand for arbitration "was not the correct, signed contract." It also confirmed that the correct contract was the one offered by Infinity in which the arbitration provision had been struck by the parties. Nevertheless the trial court, considering only the documents submitted by the parties and legal argument, denied the motion to stay arbitration on the theory that Infinity's participation in the arbitration process waived its right to have its disputes with Mr. Hutchinson decided in a trial forum. Infinity appeals. Our jurisdiction is based on rule 9.130(a)(3)(C)(iv), Florida Rules of Appellate Procedure. As the only evidence before the court was in the form of the same documents that are now before us, we review the order de novo.
Article I, section 21 of the Florida Constitution requires the courts of this state to be "open to every person for redress of any injury." As with any other constitutional right, the right of access to the courts may be relinquished. See Kaplan v. Kimball Hill Homes Fla., Inc., 915 So.2d 755, 761 (Fla. 2d DCA 2005), review denied, 929 So.2d 1053 (Fla.2006).
Arbitration stands on a different foundation because it is a matter of contract. Accordingly, a party cannot be compelled to arbitrate any dispute that he or she did not agree to submit to arbitration. Kemiron Atl., Inc. v. Aguakem Int'l, Inc., 290 F.3d 1287, 1290 (11th Cir.2002); Technical Aid Corp. v. Tomaso, 814 So.2d 1259, 1261 (Fla. 5th DCA 2002). In deciding whether arbitration is required, therefore, one must necessarily begin by asking whether the parties contractually agreed to arbitrate. If they did not, then unless there is a waiver of the right, Article I, section 21 requires submission of the legal dispute to the courts.
In the present case it is abundantly clear that the parties did not agree to arbitrate any dispute, including any that might arise out of the construction contract. The trial court nevertheless ruled that the matter of the water leakage around the windows would remain in arbitration because it found that Infinity had waived its right to have its dispute with Mr. Hutchinson litigated in the courts. We think the trial court erred.
Waiver is "the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." See Raymond James Fin. Servs., Inc. v. Saldukas, 896 So.2d 707 (Fla.2005); see also LeNeve v. Via South Florida, L.L.C., 908 So.2d 530, 535 (Fla. 4th DCA 2005).
When a party moves to compel arbitration of an issue, a trial court must consider the following three elements: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived. See Raymond *756 James, 896 So.2d at 711; Seifert v. U.S. Home Corp., 750 So.2d 633, 636 (Fla.1999). Here, of course, there is no valid written agreement to arbitrate, and there are, accordingly, no arbitrable issues under the contract. Thus, unless Infinity has waived its right to seek a resolution of the dispute in the courts, as the trial court indeed found, the conclusion that Infinity may not be forced to arbitrate is compelled.
Whether a party has waived its right to arbitrate  or presumably to litigate  depends on the trial court finding: (1) the existence of a right which may be waived; (2) actual or constructive knowledge of the right; and (3) an intent to relinquish the right. See LeNeve, 908 So.2d at 535. Proof of waiver may either be express or implied from "conduct or acts that lead a party to believe that the right has been waived." Id.
Here, Infinity actually began participating in the arbitration process, but did so as a result of the attachment by Mr. Hutchinson of a document that had never been executed by the parties. In fact, the parties had specifically and unequivocally agreed not to arbitrate, as the true contract amply demonstrated. Moreover, only after a delay in the exchange of some documents that were demanded by Infinity did Infinity find the real contract in its files. Upon doing so, Infinity immediately acted to enforce its right to litigate. Under these circumstances where no more than the preliminary stages of arbitration had begun, we conclude that there was simply no waiver because there was no knowing intent to do so. Infinity's negligence in not locating the valid contract sooner is not sufficient to void its constitutional right to a judicial resolution of the claims.
The courts of this state have frequently recognized that by participating in litigation, a party might waive its right to arbitration. See, e.g., Mora v. Abraham Chevrolet-Tampa, Inc., 913 So.2d 32 (Fla. 2d DCA 2005). Thus, it is helpful to consider the obverse in the context of the present case. We have located two significant cases in Florida in which a participant in arbitration has been determined to have waived its right to litigate in the courts. See LeNeve; Victor v. Dean Witter Reynolds, Inc., 606 So.2d 681 (Fla. 5th DCA 1992), review denied, 614 So.2d 502 (Fla. 1993). Each of these cases, however, is readily distinguishable from the case currently before us.
The first case, LeNeve, was relied upon by the trial court as support for its conclusion that Infinity had waived its right to litigate. The facts there, however, were substantially different from those of the present case. In LeNeve, the appellant was not an original party to a general partnership contract, but was the president and director of one of the contracting partners. The contract contained an arbitration provision that specifically excluded any additional persons who were not signatories to the agreement. The appellant, however, specifically authorized his attorney to include him as a counter-petitioner and to file an answer in a matter that arose from the contract, even though the appellant was not named in the dispute. When the arbitration panel discovered that the appellant was not a party to the contract, it raised the issue of whether the parties wanted to allow him to participate. The appellant responded in writing by affirmatively waiving his non-party defense to arbitration and his right to submit his claims to the circuit court. The other parties agreed, and the panel recognized the appellant's "consent to jurisdiction." The petitioner then amended its complaint to include the appellant, and the parties litigated the matter aggressively.
After the arbitration panel found in favor of the petitioner, the appellant filed an objection to arbitration, claiming that he *757 really only waived his right to arbitrate claims made by him, but not against him. He then attempted to withdraw his counterclaims and discontinue participation in arbitration. The Fourth District Court, however, affirmed the finding of the trial court that appellant waived his right to litigate in court. The appellate court held that because arbitration jurisdiction derives from the agreement of the parties, it can be broadened during the course of arbitration by consent, waiver, or failure to object. Thus, even if the appellant thought he was only waiving his right to litigate his counterclaims, the court found that his active participation in arbitration for six months constituted an implied waiver of all of his claims. See LeNeve, 908 So.2d at 535.
The present case is markedly different from LeNeve. In LeNeve the appellant was fully aware that he did not have to use arbitration to resolve the conflicts, yet specifically and intentionally sought to do so in writing. Here, on the other hand, Infinity began its relatively short participation in the arbitration process in the mistaken belief that it was compelled to arbitrate by the contract. The constitutional right to access to the courts of this state should not, without more, be waived by mistake, particularly where there is little harm wrought by the mistake.
Similarly, in Victor an investment brokerage agreement between the parties specifically called for arbitration, and both parties willingly participated in it. Only after many months of wrangling and just before the scheduled arbitration, Dean Witter Reynolds, Inc., the stock brokerage firm filed suit to have the courts, rather than the arbitration panel, decide a statute of limitations issue. This court found, however, that the brokerage firm had waived its right to seek a judicial determination of the limitations issue because of its long, active, knowledgeable and intentional participation in the arbitration process. We said there, in fact:
Dean Witter's problem, however, is of its own making. For its own purposes, Dean Witter chose to draft customer agreements requiring customers to submit to arbitration of `any controversy.' It is not surprising that, in circumstances like those presented in this case, Dean Witter would not prefer the procedural and substantive advantages of a judicial forum for the prompt and dispassionate application of such dispositive legal defenses as the statute of limitations. But Dean Witter elected a different, nonjudicial forum for resolution of `any controversy' with its customers. Having provided for arbitration in its customer agreement, Dean Witter will have to trust the arbitrators to do their jobs properly.
Victor, 606 So.2d at 686.
The present case is once again different. There is no contract document that conferred jurisdiction of the controversy on the arbitrators. There was no choosing by Infinity to submit any contract issues to arbitration. Here, there is little question but that Infinity participated in arbitration only by mistake, and that as soon as it discovered its mistake, it sought a judicial determination of its rights. There was no knowing waiver of Infinity's right to have the dispute litigated in the courts of Florida. Under these circumstances the use of arbitration should not have been compelled.
Accordingly, we reverse and remand for further action consistent with this opinion.
REVERSED AND REMANDED.
PALMER, C.J. and THOMPSON, J., concur.