# Third District Court of Appeal

## State of Florida

Opinion filed June 6, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-729
Lower Tribunal No. 16-18748

_____

## City of Miami,
Appellant,

vs.

## Fraternal Order of Police Lodge #20, etc.,
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Barbara Areces, Judge.

Victoria Mendez, City Attorney, and Kevin R. Jones and Forrest L. Andrews, Assistant City Attorneys, for appellant.

Buschel Gibbons, P.A. and Robert C. Buschel and Eugene G. Gibbons (Ft. Lauderdale), for appellee.

Before SUAREZ, LAGOA, and SCALES, JJ.

SUAREZ, J.

This is an appeal from a final order of dismissal, which upholds an arbitration award against Appellant, the City of Miami (the "City"), in favor of

Appellee, the Fraternal Order of Police, Lodge 20 (the "FOP"). The City challenges the Arbitrator's authority to decide whether the City violated a Collective Bargaining Agreement by precluding two police officers, Lieutenant Javier Ortiz and Sergeant Edward Lugo (the "Officers"), from working extra duty (commonly referred to as off-duty) at the Ultra Music Festival ("Ultra"). Because we find that the Arbitrator did not have the authority to hear a dispute concerning extra duty work, and that the City did not waive the issue of whether the Arbitrator had such authority, we hold that the trial court erred in denying the City's motion to vacate and in confirming the award, and we reverse and remand for further proceedings.

BACKGROUND

Prior to 2014, Ortiz and Lugo would routinely sign up to work extra duty at Ultra. During the March 2011 Festival, the Officers were involved in the arrest of Jesse Campodonico, who subsequently sued, alleging that the two Officers used excessive force. An indemnity agreement between the City and Ultra required Ultra to indemnify the City for any negligent acts committed by the City's police officers.[1] In January 2014, Ultra's insurer agreed to pay $400,000.00 to settle Campodonico's claim.

---

[1] Following an internal affairs investigation, the Officers were exonerated of any wrongdoing.

2

In 2014 and 2015, Ultra contacted the City to request that the Officers not be assigned to work at the 2014 and 2015 festivals. The City agreed to prohibit the Officers from working at Ultra but permitted them to work at any other event during the larger Winter Music Festival. Following the denial of their requests to work at Ultra, both Officers filed grievances. The City denied the grievances, and the parties[2] proceeded to arbitration pursuant to a Collective Bargaining Agreement (the "Agreement").[3]

The City participated in arbitration but argued that the Arbitrator lacked the authority to consider the Officers' grievances because working an extra duty job was not a subject covered under the Agreement. The Arbitrator disagreed and concluded that he had authority to review the Officers' grievances. The arbitration award ultimately sustained the grievances and ordered that the Officers be compensated and allowed to pursue extra duty at future Ultra events. Following the award, the City filed a motion to vacate in the circuit court pursuant to section 682.13(1)(d), Florida Statutes, claiming the Arbitrator exceeded his authority. The court denied the City's motion and granted the Officers' motion to confirm the arbitration award. This appeal follows.

---

[2] FOP is the exclusive bargaining representative of the Officers.

[3] There are actually two collective bargaining agreements: (1) a 2012-2014 Agreement and (2) a 2014-2015 Agreement. The relevant language in the two agreements is the same.

3

ANALYSIS

A trial court's role in determining arbitrability under the Revised Florida Arbitration Code is limited to the following inquiries: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." 3A Fla. Jur. 2d Arbitration and Award § 54; see also Lucky Star Horses, Inc. v. Diamond State Ins. Co., 233 So. 3d 1159, 1161 (Fla. 3d DCA 2017) (citing Seifert v. United States Home Corp., 750 So. 2d 633 (Fla. 1999)). Here, there is no dispute that a valid written agreement to arbitrate exists. We therefore address the remaining two prongs: whether an arbitrable issue exists and whether the City waived its objection to the Arbitrator's authority.

**1. Whether an Arbitrable Issue Exists**

"Section 682.13(1) sets forth the only grounds upon which an award of an arbitrator in a statutory arbitration proceeding may be vacated . . . ." Schnurmacher Holding, Inc. v. Noriega, 542 So. 2d 1327, 1328 (Fla. 1989); see also LeNeve v. Via S. Florida, L.L.C., 908 So. 2d 530, 534 (Fla. 4th DCA 2005) ("Where the party moving to vacate fails to prove one of the [statutory grounds set forth in § 682.13(1)], 'neither a circuit court nor a district court of appeal has the authority to overturn the award.'" (quoting Schnurmacher, 542 So. 2d at 1328)). The City relies on section 682.13(1)(d), Florida Statutes (2017), which provides

4

that the court shall vacate an arbitration award if "[a]n arbitrator exceeded the arbitrator's powers . . . ."

Arbitration is a matter of contract. An arbitrator's authority to conduct an arbitration and the issue(s) to be arbitrated are granted and limited by the operative document(s) in question or by agreement of the parties themselves. The arbitrator exceeds his or her authority by arbitrating any other issues. In the present case, Article 6.8, step 4 of the Collective Bargaining Agreement refers certain grievances to arbitration and limits the Arbitrator's authority to hear only those grievances:

> 2. The arbitration shall be conducted under the rules set forth in this Agreement and not under the rules of the American Arbitration Association. Subject to the following, the Arbitrator shall have jurisdiction and authority to decide a grievance as defined in this Agreement. **The Arbitrator shall have no authority to change, amend, add to, subtract from, or otherwise alter or supplement this Agreement**, or any part thereof, or any amendment hereto. **The Arbitrator shall have no authority to consider or rule upon any matter which is stated in this Agreement not to be subject to arbitration or which is not a grievance as defined in this Agreement, or which is not covered by this Agreement**; nor shall this Collective Bargaining Agreement be construed by the Arbitrator to supersede any applicable laws.

(Emphasis added). Under this provision, the Arbitrator only has the authority to decide a grievance, as defined in the Agreement.[4] Article 6.2 defines the term "grievance" as follows:

5

6.2 A grievance is any dispute, controversy or difference between (a) the parties, (b) the City and a bargaining unit member or bargaining unit members on any issues **with respect to, on account of or concerning the meaning, interpretation or application of this Agreement or any terms or provisions thereof.**

(Emphasis added). In short, the Arbitrator is only given the authority to decide disputes over the meaning, interpretation, or application of the provisions found in the Collective Bargaining Agreement. The Arbitrator is not granted the authority to decide any other disputes. See Schnurmacher, 542 So. 2d at 1329 ("[A]n arbitrator exceeds his or her power . . . when he or she goes beyond the authority granted by the parties or the operative documents and decides an issue not pertinent to the resolution of the issue submitted to arbitration.").

Nowhere in the Collective Bargaining Agreement is there a provision concerning the privilege of extra duty work. As such, a dispute concerning extra duty work is not a grievance that is subject to arbitration. In the instant case, the Arbitrator found that he had the authority to arbitrate the Officers' grievances by engaging in a creative analysis of material outside of the Collective Bargaining Agreement having to do with extra duty employment. Specifically, the Arbitrator first relied on Article 23 of the Collective Bargaining Agreement—the "Prevailing

---

[4] Relatedly, Article 4.4 of the Agreement provides as follows: "Those inherent managerial functions, prerogatives, and policy making rights which the City has not expressly modified or restricted by a specific provision of this Agreement are not in any way, directly or indirectly, subject to the Grievance Procedure contained in this Agreement."

Benefits" provision—which states that all benefits in effect when the Agreement was entered into, **including benefits provided by ordinance**, "shall remain in full force and effect for the duration of this Agreement." Because Article 23 refers to "benefits provided by ordinance," the Arbitrator then impermissibly went outside of the four corners of the Collective Bargaining Agreement to section 42-8(a) of the City Code of Ordinances, which essentially states that the chief of police evaluates off-duty requests pursuant to "the factors of existing laws, ordinances, **rules and regulations**, personnel scheduling availability, risk of harm to personnel, and police department efficiency." (Emphasis added). Based on the "rules and regulations" language from the Ordinance, the Arbitrator looked to a second source outside of the Agreement: Departmental Order 12, which describes the process to sign up for extra duty work. Although the Departmental Order clearly states that "[w]orking special events or extra duty jobs shall be considered a <u>privilege</u>, not a right," (emphasis added) the Arbitrator concluded that extra duty jobs were in fact benefits (despite the explicit wording that extra duty is a privilege). He then concluded that since Article 23 of the Collective Bargaining Agreement covered "Prevailing Benefits," a dispute as to extra duty work would be a grievance under the Collective Bargaining Agreement and subject to arbitration.

We have no difficulty concluding that the Arbitrator exceeded his authority in considering a matter that was not subject to arbitration pursuant to the provisions

of the Collective Bargaining Agreement. In order to reach the issue, the Arbitrator went beyond the arbitration provisions of the Collective Bargaining Agreement. The Arbitrator went from the Prevailing Benefits provision within the Agreement—which makes no mention of "extra duty"—to a City Ordinance, and finally to a Departmental Order, both of which are outside of the Collective Bargaining Agreement. Moreover, the Departmental Order explicitly states that extra duty is a privilege and not a right. Consequently, we find that the Arbitrator exceeded his powers. See § 682.13(1)(d), Fla. Stat. But we next must address whether the City waived its objection to the Arbitrator determining the issue of arbitrability. If the City did waive its objection, the Arbitrator's findings must be affirmed even if the Arbitrator did exceed his authority.

## 2. Whether the City Waived Its Objection to the Arbitrator's Authority

The Officers' primary argument on appeal is that the City waived the issue of arbitrability. We are bound by the rule set forth in Schnurmacher, which states that an arbitration award "cannot be set aside for mere errors of judgment either as to the law or as to the facts; if the award is within the scope of the submission, and the arbitrators are not guilty of the acts of misconduct set forth in the statute, the award operates as a final and conclusive judgment." 542 So. 2d at 1328 (quoting Cassara v. Wofford, 55 So. 2d 102, 105 (Fla.1951)). If the City waived arbitrability, we would be compelled to uphold the arbitration award, even if the

8

Arbitrator exceeded his authority under the Agreement.  See LeNeve v. Via S. Florida, L.L.C., 908 So. 2d 530, 534–35 (Fla. 4th DCA 2005) ("[U]nlike a court's subject matter jurisdiction which cannot be conferred by the parties, an arbitrator's jurisdiction derives from the parties' agreement and can broaden during the course of arbitration by waiver, failure to object and consent."  (internal quotation marks omitted)).

Most cases on waiver in the context of arbitration deal with the more common issue of whether a party waives arbitration by litigation; however, waiver can also work in reverse.  That is, a party can waive its ability to litigate by engaging in arbitration.  See 92 Am. Jur. Proof of Facts 3d 1 ("Although a court is usually the proper venue for decisions about arbitrability, if the parties clearly and unmistakably submit the issue to the arbitrator without reservation, then the parties have waived their right to have a court make the decision.  When the parties to an arbitration agreement have agreed to allow the arbitrator to decide arbitrability, the court should give considerable leeway to the arbitrator, setting aside an award only in certain narrow circumstances.").

In First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995), the United States Supreme Court explained that "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so."  See also Rintin Corp., S.A. v. Domar, Ltd., 766 So. 2d

9

407 (Fla. 3d DCA 2000). In the instant case, the trial court determined that "[t]he City did not waive its objection to the Arbitrator's authority throughout the arbitration proceedings . . . ." We agree.

The Officers argue that the record "clearly shows" that the City consented to the Arbitrator's authority to decide the issue of arbitrability. They point us to the following exchange at the beginning of the arbitration hearing:

> THE ARBITRATOR: My question was not with regard to that, but whether the City is prepared and is basically deferring the question of arbitrability to the Arbitrator?
> [THE CITY]: I think it's a legal question. It's not necessarily a factual question. I think the facts in that issue are well-established.
> THE ARBITRATOR: I understand that.
> [THE CITY]: **But we can defer it, if you'd like, and proceed, and we'll bring it up at the end, if you'd like.** I mean--
> THE ARBITRATOR: I'm prepared to hear evidence with regards to the procedural question of arbitrability, but I need some clarification that indeed the City is deferring the matter of arbitrability for resolution to the Arbitrator.
> [THE CITY]: I see. **Sure. I'll defer it**.

(Emphasis added).

While this statement may seem to indicate that the City waived its objection to arbitrability, the transcript as a whole suggests that the City consistently maintained its position that the Arbitrator was without authority to decide the issue. During the hearing, the City also made the following statements:

10

> But, I think, for the two watershed issues, One, they have to establish that they have a right to this. They have to put on some evidence to demonstrate or show somebody that they had a right that was contravened, **if we get beyond the arbitrability part, which I've already agreed that we will move forward and we will reserve on that issue**.
>
> . . . .
>
> After you finish [r]edirecting Lieutenant Ortiz, I'd like to call them out of turn, **still reserving on the issue of arbitrability and whether or not they've proven anything in regard to a right or a privilege that's arbitrable**, they've got to go somewhere else. So I want to get them on the record –

Based on the record evidence as a whole, the City's agreement to defer is far from a "clear and unmistakable" agreement to waive the issue of arbitrability. Instead, the City allowed arbitration to go forward while explicitly and repeatedly reserving on the issue of arbitrability.

The Officers also argue that the City should have done more if it wanted the option to litigate arbitrability. They rely on Infinity Design Builders, Inc. v. Hutchinson, 964 So. 2d 752 (Fla. 5th DCA 2007), one of the few Florida cases addressing waiver of litigation by engaging in arbitration.[5] In Hutchinson, Infinity

---

[5] The Fifth District in Hutchinson distinguishes its decision from "two significant cases in Florida in which a participant in arbitration has been determined to have waived its right to litigate in the courts." Id. at 756. Those cases are also distinguishable from the case before us. In LeNeve, 908 So. 2d 530, LeNeve waived, in writing, his right to submit arbitrability to the circuit court. In Victor v. Dean Witter Reynolds, Inc., 606 So. 2d 681 (Fla. 5th DCA 1992), the Fifth District found that a brokerage firm had waived its right to have the courts decide a statute

11

took a number of preliminary steps consistent with its participation in arbitration. Before the actual arbitration, however, it filed an objection, asserting that no arbitration agreement existed between it and Hutchinson. Infinity also moved to stay the arbitration proceedings. Although the circuit court found that the arbitration provision had been struck from the agreement, it denied the motion to stay based on Infinity's participation in the arbitration process. The Fifth District reversed, finding that although Infinity participated, it did not knowingly intend to relinquish its right to litigate because it immediately acted to enforce its rights once it knew that the contract did not contain an arbitration provision. Id. at 756.

Hutchinson does not stand for the proposition that a party waives its right to litigate unless it refuses to participate in arbitration or files a motion to stay. Rather, the decisive inquiry is whether a party voluntarily and knowingly intended to waive its right to litigate arbitration. Id. at 755 ("Waiver is the voluntary and intentional relinquishment of a known right or conduct which implies the voluntary and intentional relinquishment of a known right." (internal quotation marks omitted)).

Here, although the City participated in arbitration, it consistently and repeatedly raised the issue of arbitrability. See Kaplan, 514 U.S. at 946 ("[M]erely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness

of limitations issue because of its long, active, knowledgeable, and intentional participation in the arbitration process.

12

to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point."). We therefore agree with the trial court that City did not waive its objection to the Arbitrator's power.

Because the Arbitrator exceeded his authority to decide the Officers' grievances and the City did not waive its objection to arbitrability, we affirm the trial court's determination on waiver but reverse with respect to the court's denial of the City's motion to vacate the arbitration award.

Affirmed in part, reversed in part, and remanded for further proceedings.